UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:21-CR-7-D

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCO ANTONIO HERRERA-ROBLES | MOTION TO DISMISS and INCORPORATED MEMORANDUM OF LAW<br>Fed. R. Crim. P. 12(b)(3)<br>U.S. Const., Amend. VI |

The defendant, Marco Antonio Herrera-Robles, by and through counsel, respectfully moves this Honorable Court to dismiss the indictment. The nearly five-and-a-half-year delay between indictment and arrest violated the Sixth Amendment's Speedy Trial guarantee. The nearly five-year pre-indictment delay supports this Sixth Amendment post-indictment challenge.

In support of this motion, Mr. Herrera-Robles presents the following:

**STATEMENT OF CASE**

A single-count indictment returned January 6, 2021, charged Mr. Herrera-Robles with knowingly making a false claim to U.S. citizenship on a voter registration form dated January 25, 2016, in the Eastern District of North Carolina. DE 1. A corresponding arrest warrant also issued on January 6, 2021. DE 6. Five years and five months later, Deputy United States Marshals arrested Mr. Herrera-Robles on June 26, 2026, at his residence in the Northern District of Georgia.

At his initial appearance and removal hearing that same day, the United States Magistrate Judge from the Northern District of Georgia released Mr. Herrera-Robles on his own recognizance. DE 15, Adopted Order Setting Conditions of Release. However, while still in Marshal's custody,

Homeland Security Enforcement and Removal Officers (EROs) placed an immigration detainer on Mr. Herrrera-Robles and took him into immigration custody. Attach. 1, DHS Encounter Details.

Immigration officers and the case agent from Homeland Security Investigations (HSI) transported Mr. Herrera-Robles from Georgia to this District for his initial appearance, held on n July 22, 2026, before United States Magistrate Judge James E. Gates. DE 14. Judge Gates adopted the release conditions set by the Northern District of Georgia. *Id.* The HSI case agent arranged for Mr. Herrera-Robles' transport back to Georgia, where he remains in immigration custody at the Stewart Detention Center in Lumpkin, Georgia.

The deadline for filing pretrial motions is September 21, 2016. DE 21. Arraignment is set for the October 19, 2026 Term of Court.

**FACTS**

On January 25, 2016, Mr. Herrera-Robles' mother took him to a Hispanic community center in Raleigh, North Carolina, for assistance in filling out his renewal for Consideration of Deferred Action for Childhood Arrivals (DACA). Attach. 2, DACA Application. The DACA renewal was filled out by computer. *Id.* The form has Mr. Herrera-Robles' signature, dated January 25, 2016. *Id.*, p.5. After returning home to Middlesex, North Carolina, he mailed the DACA form to United States Citizen and Immigration Services (USCIS). Attach. 3, Envelope to USCIS.

The voter registration form referenced in the indictment is also dated January 25, 2016. Attach. 4, NC Voter Registration. It is filled out in all capital letters and has a signature somewhat like the signature on the DACA form. *Id.* The North Carolina Board of Elections received this form on January 28, 2016. *Id.* It remains unclear how the voter registration was sent to the Board

of Elections or by whom. There is no evidence that Mr. Herrera-Robles ever voted here in the United States.

In July 2016, he married Maria Bucio-Mendez. In December 2016, the couple moved from North Carolina to Norcross, Georgia, where her parents lived.

In November 2019, immigration officers administratively arrested Mr. Herrera-Robles to initiate removal proceedings. Attach. 5, Bond Order. The immigration judge authorized his release upon posting of a $12,000 bond. *Id.* He remained on immigration release until June 26, 2026, when ERO officers issued a detainer and arrested him following his release from Marshal's custody. Attach. 1, DHS Encounter Details.

On December 6, 2019, the Assistant United States Attorney signed a target letter for Mr. Herrera-Robles. It stated in relevant part: "This office is reviewing investigative materials prepared by Homeland Security Investigations . . . containing allegations of false claim of United States citizenship in order to register to vote." Attach. 6, Target Letter.[1] It gave a response deadline of January 6, 2020. *Id.* On February 6, 2020, the case agent from Homeland Security Investigations (HSI) sent the target letter via Federal Express to the residence in Norcross, Georgia, where Mr. Herrera-Robles lived with his wife and in-laws. *Id.* The computer-generated receipt indicates the letter arrived February 7, 2020, signed by "M. Robles." *Id.*

No other information received in discovery shows that Mr. Herrera-Robles was the person who received the letter or that he read it. Nor does any evidence indicate the Government received a response on his behalf from either appointed or retained counsel.

[1] Counsel has requested additional discovery detailing the investigation that presumably preceded the 2019 target letter. Based on counsel's experience with the voter registration and voting cases from 2018 and 2019, the Government's investigations began in 2017.

On January 6, 2021, eleven months after delivery of the target letter, the Government sought and obtained the instant indictment, just nineteen days shy of the five-year statute of limitations, 18 U.S.C. 3282(a). DE 1.

The Government then waited nearly five-and-a-half years to execute the January 6, 2021 arrest warrant, when the Marshals arrested Mr. Herrera-Robles at his residence on June 26, 2026. In sum, over ten years elapsed between the date of the alleged conduct in the indictment and his arrest on that charge.

## ARGUMENT

The unreasonable and prejudicial five-and-a-half-year post-indictment delay violated Mr. Herrera-Robles' Sixth Amendment right to a speedy trial. The nearly five-year pre-indictment delay exacerbated this prejudicial impact.

"The Sixth Amendment guarantees that, 'in all criminal prosecutions, the accused shall enjoy the right to a speedy trial[.]'" *Doggett v. United States*, 505 U.S. 647, 651 (1992) (quoting the Sixth Amendment). This guarantee applies to post-indictment delays. *Id.*

Courts evaluate four factors to determine whether a post-indictment delay violates the Sixth Amendment: "[1] whether the delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Application of the four *Barker* factors to this case demonstrates that the post-indictment delay of more than five years violated Mr. Herrerra-Robles' right to a speedy trial.

1. Length of Delay

To evaluate this factor, courts distinguish between "ordinary from presumptively prejudicial delay." *Doggett*, 505 U.S. at 651-52 (internal quotations and citation omitted). Mr. Herrera-Robles was indicted on January 6, 2021 and arrested on June 26, 2026. A delay exceeding five years is considered presumptively prejudicial. *See Barker*, 407 U.S. at 553 (finding a five-year delay between arrest and trial was "extraordinary"); *see also United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) (finding that a 35-month delay between indictment and arraignment "is *a fortiori* too long" in a case involving five conspiracy charges); *United States v. Ingram*, 446 F.3d 1332, 1338 (11th Cir. 2006) ("The post-indictment delay in this case was two years, twice the threshold for presuming prejudice.").

Here, the single-count indictment alleges a discrete offense. It encompasses one document signed on one date. Given the straightforward nature of the offense, the Sixth Amendment cannot tolerate the more than five-year delay between indictment and arrest. *Barker*, 407 U.S. at 530 (emphasizing, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

In short, the length of delay here weights toward finding a Sixth Amendment violation.

2. Reason for Delay

To weigh this factor, courts distinguish between improper, neutral, and valid reasons. *Grimmond*, 137 F.3d at 828. Deliberate delays to hamper the defense "weigh[] heavily against the government." *Barker,* 407 U.S. at 531. Though neutral reasons such as an understaffed office receive lesser weight, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Valid reasons favor the government, but none are present here. *See Barker*, 505 US at 531 (locating a missing witness); *Grimmond*, 137 F.3d at

828 (waiting for another sovereign to finish prosecution of a codefendant); *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (complex nature of a conspiracy case with multiple parties across jurisdictions).

The post-indictment delay in this case resulted from prosecutorial neglect. The Government had ample opportunity to arrest Mr. Herrera-Robles when it indicted him on January 6, 2021. It had his residential address at least by February 2020, when it sent the target letter. No information received thus far indicates the Government made any effort to arrest Mr. Herrera-Robles until June 26, 2026, when the Marshals arrested him at his residence.

Moreover, given the straightforward nature of the offense charged, the Government cannot excuse its neglect by contending it required extensive investigation. The prosecution had all it needed -- the voter registration form and Mr. Herrera-Robles' location – even before it issued the target letter. Waiting over five years to arrest him for a voter registration form signed more than ten years before can only be ascribed to "intolerable" neglect. *See Ingram*, 446 F.3d at 1339 (11th Cir. 2006) (finding a "two-year post indictment delay intolerable" in a false-statement case where the Government had the necessary evidence "on the date of the indictment" and knew how to find the defendant).

Finally, the Government cannot blame its own negligence on Mr. Herrera-Robles. No credible information indicates he knew of the indictment until arrested on June 26, 2026. Nor did he take any evasive action to avoid service of the warrant issued over five years before.

The target letter sent February 6, 2020 did not provide the requisite notice of the indictment filed almost a year later. Assuming *arguendo* that Mr. Herrera-Robles received and read the letter, it gave a response deadline of January 6, 2020, which expired a month before the target letter was received. Attach. 6, Target Letter. In *Ingram*, an agent questioned the defendant

within months of the alleged false statement and two years before the indictment was filed. 446 F.3d at 1335. Yet the Court concluded, "[t]here is no evidence Ingram knew of the indictment or the arrest warrant at any time during the two years preceding his voluntary surrender" in 2004. *Id.* at 1337 (finding "the district court clearly erred in holding Ingram culpable for part of the delay").

In sum, the Government's own neglect caused the post-indictment delay. It cannot claim neutral reasons such as complexity of the case or scarcity of staffing excuse this negligence. While the Government may not have had an improper purpose to hamper Mr. Herrera-Robles' defense, its negligence requires ascribing greater weight against it than a more benign neutral reason otherwise would. As the Supreme Court reasoned: "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657.

Thus, the Government's negligence favors finding a Sixth Amendment violation.

3. Timely Assertion of Speedy Trial Right

Mr. Herrera-Robles did not know about the 2021 indictment until the Marshals arrested him on June 26, 2026. Counsel filed his notice of appearance on July 23, 2026. DE 16. On August 12, 2026, counsel requested and received a thirty-day extension of the August 21, 2026 motions filing deadline to conduct an initial investigation and research, DE 20 & 21, efforts made more difficult given Mr. Herrera-Robles remains in immigration custody in Georgia.

In *Barker*, the Supreme Court clarified that requiring "an automatic, *pro forma* demand made immediately after appointment of counsel . . . is not consistent with the interests of defendants, society, or the Constitution." 407 U.S. at 528.

Mr. Herrera-Robles now timely asserts his speedy trial rights by filing this motion within two months of his initial appearance in this District and counsel's appointment, one month prior to arraignment, and several months prior to any trial.

This timely assertion of "his speedy trial right [] is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right." *Barker*, 407 U.S. at 531-32.

4. Prejudice

Prejudice "should be assessed in the light of the interests of defendants which the speedy right was designed to protect." *Id.* at 532. These interests include: (1) preventing "oppressive pretrial incarceration"; (2) minimizing the "anxiety and concern of the accused"; and (3) limiting "the possibility that the defense will be impaired." *Id.*

The first two interests are not currently present to a strong degree. Mr. Herrera-Robles has not been ordered detained (though he remains in immigration detention[2]) and he was unaware of the indictment until recently.

The third interest is "[t]he most serious . . . because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id.* Here, the Government's negligence has impaired Mr. Herrera-Robles' ability to "adequately prepare his case." *Id.*

[2] At this point, counsel does not advance a constitutional challenge based on the Executive Branch's decision to disregard this Court's release order and keep Mr. Herrera-Robles in indefinite immigration custody. However, if this continued custody implicates his constitutional rights to a speedy trial, effective assistance of counsel, or due process, counsel will seek leave of Court to make that related constitutional challenge. Should these post-arrest actions of the Executive Branch cause "unnecessary delay" in bringing Mr. Herrera-Robles to trial, counsel would likewise seek leave to move to dismiss pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 48(b)(3) (dismissal ground for "unnecessary delay" in "bringing a defendant to trial").

Over ten years have passed since the voter registration form which forms the crux of the Government's case was signed and delivered to the North Carolina Board of Elections. Nine years have passed since the Government began its investigations in the voting and voter registration cases in 2017.

While these time periods do not independently trigger this Sixth Amendment challenge, the pre-indictment passage of time informs the prejudicial impact of the five-and-a-half-year post-indictment delay caused by the Government's neglect. As the Court in *Ingram* explained, "once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government," 446 F.3d at 1339. *See also United States v. Alabi*, 786 F. Supp. 3d 905, 917 (D. Md. 2025) ("Here, the post-indictment delay in excess of five years stretches far beyond the bare minimum necessary to trigger a speedy trial analysis, especially when considered in combination with the three-year delay in charges before the Indictment was filed.") (citing *Ingram*, 446 F.3d at 1339, and *United States v. Vispi*, 545 F.3d 323, 333 (2d Cir. 1976)).

In this case, the five-and-a-half-year post-indictment delay has prejudiced Mr. Herrera-Robles' ability to defend against the charge that he knowingly claimed United States' citizenship in the voter registration form signed on January 25, 2016.

Based on counsel's experience with the voter registration and voting cases from 2018 and 2019, many of the handwritten registrations were filled out by canvassers, not the person who signed the voter registration. These same canvassers would then deliver the signed forms to the Board of Elections.

Because the DACA renewal and voter registration form have the same date, January 25, 2016, both could have been signed at the community center where Mr. Herrera-Robles' mother

took him that day. Since the person who filled out the DACA renewal is not identified, counsel cannot even attempt to find that person from ten years ago. If a canvasser other than the person who prepared the DACA renewal had Mr. Herrera-Robles sign the voter registration form, the same passage of time makes it difficult if not impossible to locate that key witness.

The inability to locate a key witness is akin to "witnesses who die or disappear during a delay." *Barker*, 407 U.S. at 532. Even if the voter registration canvasser could still be found, that witness would likely be "unable to recall accurately the events of the distant past" -- the circumstances that resulted in the signing and delivery of the voter registration form.

These two limitations impaired Mr. Herrera-Robles' ability to present a defense, and "skew[] the fairness of the entire system." *Id*. Accordingly, "the prejudice is obvious." *Id.*

## CONCLUSION

In sum, all four factors required to find a Sixth Amendment speedy trial violations favor dismissal: (1) the post-indictment delay was presumptively prejudicial; (2) the Government's neglect caused this delay; (3) Mr. Herrera-Robles timely asserted his speedy trial right; and (4) the lengthy delay impaired his ability to present a defense.

The Court should therefore dismiss the indictment with prejudice.

Respectfully submitted this 21st day of September, 2026.

G. ALAN DUBOIS
` Federal Public Defender

/s/ James E. Todd, Jr.
JAMES E. TODD, JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
201 South Evans Street, Suite 153
Greenville, North Carolina 27858
Telephone: 252-830-2620
Fax: 252-830-2232
E-mail: Jay_Todd@fd.org
N.C. State Bar No. 28832
LR 57.1 Counsel
Appointed

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon Assistant U.S. Attorney Bradford DeVoe via CM/ECF.

This the 21st day of September, 2026.

G. ALAN DUBOIS
Federal Public Defender
/s/ James E. Todd, Jr.
JAMES E. TODD, JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
201 South Evans Street, Suite 153
Greenville, North Carolina 27858
Telephone: 252-830-2620
Fax: 252-830-2232
E-mail: Jay_Todd@fd.org
N.C. State Bar No. 28832
LR 57.1 Counsel
Appointed